1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   AMADU TARAWALLY,

12            Petitioner,                      No. 1:26-cv-00619-TLN-CSK

13

14        v.                                   **ORDER**

15   CHRISTOPHER CHESTNUT, et al.,

16            Respondents.

17

18        This matter is before the Court on Petitioner Amadu Tarawally's ("Petitioner") motion for

19   injunctive relief.[1]  (ECF No. 2.)  Respondents Christopher Chestnut, Todd Lyons, Kristi Noem,

20   and Pamela Bondi ("Respondents") filed an opposition.  (ECF No. 8.)  Petitioner filed a reply.

21   (ECF No. 9.)  For the reasons set forth below, Petitioner's motion is GRANTED, and the Court

22   issues a preliminary injunction as described below.

23   ///

24   ///

25   ///

26   _____

27   [1]      On January 25, 2026, Petitioner filed a Motion for a Temporary Restraining Order.  (ECF
     No. 2.)  The parties indicated no objection to the Court's consideration of Petitioner's motion on
     the briefing, without oral argument, and as one for a preliminary injunction.  (ECF No. 8 at 2;
28   ECF No. 9 at 2–3.)

                                              1

1    **I.     FACTUAL AND PROCEDURAL BACKGROUND**

2         Petitioner is a noncitizen from Sierra Leone.  (ECF No. 1 at 3.)  Upon Petitioner's arrival

3    at the Atlanta International Airport on January 19, 2021, the Department of Homeland Security

4    ("DHS") initiated removal proceedings against Petitioner and paroled him into the United States.

5    (ECF No. 1-2 at 3.)  On June 5, 2025, Petitioner was detained by Immigration and Customs

6    Enforcement ("ICE") without a judicial or administrative warrant.  (ECF No. 1 at 3.)  While in

7    immigration custody, Petitioner has not been provided a bond hearing.  (*Id.* at 9.)

8         On January 25, 2026, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1.)

9    The same day, Petitioner filed the instant motion for injunctive relief.  (ECF No. 2.)

10   **II.     STANDARD OF LAW**

11        For a preliminary injunction, courts consider whether a petitioner has established: "[1] that

12   he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence

13   of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is

14   in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner

15   must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v.*

16   *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

17        In evaluating a petitioner's motion, a district court may weigh petitioner's showings on

18   the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the

19   hardships may support issuing a preliminary injunction even where the petitioner shows that there

20   are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a

21   likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a

22   petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the

23   balance of hardships [must] tip[ ] sharply" in petitioner's favor to issue the requested preliminary

24   injunction.  *Id.* at 1134–35.

25   ///

26   ///

27   ///

28   ///

2

1   **III.    ANALYSIS**

2              A.        Likelihood of Success on the Merits

3              Petitioner has established a likelihood of success on his due process claim.[2]  The Fifth

4   Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty,

5   or property without due process of law.  *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017).

6   The Due Process Clause applies to all "persons" within the borders of the United States,

7   regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due

8   Process Clause applies to all "persons" within the United States, including noncitizens, whether

9   their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights

10  extend to immigration proceedings.  *Id.* at 693–94.

11             Courts examine procedural due process claims in two steps: the first asks whether there

12  exists a protected liberty interest under the Due Process Clause, and the second examines the

13  procedures necessary to ensure any deprivation of that protected liberty interest accords with the

14  Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

15             As for the first step, the Court finds Petitioner has raised serious questions as to whether

16  he has protectable liberty interest.[3]  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025

17  WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's

18  freedom is authorized by statute, that person may retain a protected liberty interest under the Due

19

20  [2]        Petitioner also claims that his detention and revocation of release violates substantive due
21  process, the Fourth Amendment and the Immigration and Nationality Act.  (ECF No. 2 at 14.)
     Because the Court finds relief warranted under Petitioner's procedural due process claim, it
22  declines to address cumulative violations.

23  [3]        Respondents contend Petitioner is subject to mandatory detention pursuant to §
24  1225(b)(2).  (ECF No. 8 at 1.)  Courts nationwide have overwhelmingly rejected Respondents'
     argument.  See e.g., *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at
25  *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled DHS's July policy improper across
     160 different judges sitting in about 50 different courts nationwide).  These courts examined §
26  1225(b)(2) and concluded it applies only to noncitizens 'seeking admission,' a category that does
     not include noncitizens like [Petitioner], living in the interior of the country."  *Salcedo Aceros v.*
27  *Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025)
     (collecting cases).  For the same reasons, the Court finds Petitioner is not an applicant "seeking
28  admission" subject to mandatory detention under § 1225(b)(2).

Process Clause").  Petitioner was released from immigration custody in January 2021.  (ECF No. 1-2 at 3.)  For more than four years, he built a life and established a community in California.  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step – what procedures or process is due – the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention.  As discussed above, Petitioner was out of custody for more than four years and built a life in California.  Despite that, Petitioner has now been detained without being afforded a hearing.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing.  "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community."  *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted).  The Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest.  Moreover, without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

1    Finally, the Government's interest is low, and the effort and cost required to provide

2  Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-

3  TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).

4    On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due

5  process – a hearing to determine whether his detention was warranted.  Accordingly, with respect

6  to his due process claim, Petitioner has shown he is likely to succeed on the merits.

7        **B.    Irreparable Harm**

8    Petitioner has also established he will suffer irreparable harm in the absence of a TRO.

9  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration

10  detention," including "the economic burdens imposed on detainees and their families as a result

11  of detention[.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner is detained

12  and has been separated from his community.  Even if this was not sufficient to establish

13  irreparable harm, "[i]t is well established that the deprivation of constitutional rights

14  'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th

15  Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

16        **C.    Balance of Equities and Public Interest**

17    As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the

18  balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F.

19  Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092

20  (9th Cir. 2014)).  The Court finds there is no equitable reason that would tip the balance in the

21  Government's favor.  First, it is clear on this record that the balance of equities tips decidedly in

22  Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally

23  cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. &*

24  *Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to

25  prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002.  Moreover,

26  "the Ninth Circuit has recognized that the costs to the public of immigration detention are

27  staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14,

28  2025) (internal citation omitted).

Therefore, the Court GRANTS Petitioner's request for a preliminary injunction. (ECF No. 2.)

### IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1.  Petitioner's motion, (ECF No. 2), considered as a motion for preliminary injunctive relief, is GRANTED.

2.  Petitioner Amadu Tarawally shall be RELEASED IMMEDIATELY from Respondents' custody. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3.  Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral factfinder where Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present.

4.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: January 29, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE